IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:24-CV-343-M-KS

| | |
|---|---|
| MARY BORDEAUX CRAVEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| FRANK BISIGNANO, Commissioner ) | |
| of Social Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

This matter is before the court for judicial review pursuant to 42 U.S.C. § 405(g) of a final administrative decision denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the matter pursuant to the Supplemental Rules for Social Security Actions, and this matter is ripe for decision. Having carefully reviewed the administrative record and the parties' briefs, the undersigned recommends that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## STATEMENT OF THE CASE

Plaintiff applied for DIB on May 3, 2019, with an alleged onset date of March 6, 2019. (R. 15, 150–51.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 15, 61, 76, 99–100.) A hearing

---

[1] Frank Bisignano became Commissioner on May 7, 2025, and is therefore substituted as a party pursuant to Fed. R. Civ. P. 25(d).

was held on November 19, 2020, before Administrative Law Judge ("ALJ") Ethan A. Chase, who issued an unfavorable ruling on December 15, 2020. (R. 15–48.) On April 8, 2021, the Appeals Council denied Plaintiff's request for review. (R. 1–6.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff then filed a complaint in this court seeking review of this final administrative decision. *See Craven v. Kijakazi*, No. 7:21-CV-105-BM, ECF No. 1 (E.D.N.C. June 7, 2021). This court ultimately remanded the case to the Commissioner. *Id.*, ECF No. 21 (E.D.N.C. Sept. 30, 2022). The Appeals Council then vacated the prior decision of the Commissioner and remanded the case to the ALJ. (R. 828–32.)

On August 4, 2023, ALJ Chase conducted another hearing, at which Plaintiff and counsel appeared. (R. 753–78.) ALJ Chase issued an unfavorable decision on August 22, 2023. (R. 730–47.) On February 14, 2024, the Appeals Council rejected Plaintiff's exceptions and declined to exercise jurisdiction, thereby making ALJ Chase's decision the final decision of the Commissioner. (R. 717–20); *see* 20 C.F.R. § 404.984(b)(2). Plaintiff initiated this action on April 10, 2024, seeking judicial review of the final administrative decision.

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the

application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national

3

economy. *See* 20 C.F.R. § 404.1520(a)(4); *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

### III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter, the ALJ found Plaintiff last met the insured status requirements of the Act on June 30, 2023. (R. 735.) At step one, the ALJ found Plaintiff did not engage in substantial gainful employment during the period from her alleged onset date of March 6, 2019, through her date last insured of June 30, 2023. (*Id.*) Next, the ALJ determined Plaintiff had the following severe impairments: chronic obstructive pulmonary disease ("COPD"), inflammatory arthritis, peripheral neuropathy, and degenerative disc disease. (*Id.*)

4

At step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 736.) The ALJ expressly considered Listings 1.15, 3.02A, and 11.14. (*Id.*)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had

> the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she could occasionally bend, balance, crouch, crawl, climb, stoop, and kneel; she could frequently handle, finger, and feel; and she must be provided an environmentally controlled work setting avoiding concentrated exposure to extreme temperatures, wetness, humidity, respiratory irritants, and chemicals.

(R. 737.) In making this assessment, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) At step four, the ALJ concluded that, through the date last insured, Plaintiff was able to perform past relevant work as a human resources generalist (DOT #166.167-018) and office manager (DOT #169.167-034). (R. 741.) The ALJ concluded that Plaintiff was not disabled under the Act since March 6, 2019, Plaintiff's alleged onset date, through the date last insured of June 30, 2023. (*Id.*)

## IV. Plaintiff's Arguments

Plaintiff raises four arguments on review:

> (A) the ALJ failed to properly explain his reasons for discounting Plaintiff's allegations of pain, difficulty breathing, and physical dysfunction (Pl.'s Br. [DE #13] at 8–12);

5

(B) the ALJ improperly assessed the medical opinions of treating providers Dr. Jonathan Blackmore, M.D., and Cathy Sellers, NP (*id.* at 12–15);

(C) the ALJ improperly assessed the medical opinion of treating provider Dr. Lekeshia Jarrett, M.D. (*id.* at 15–17); and

(D) the ALJ's step-four finding that Plaintiff could perform her past relevant work was "legally prohibited" because the ALJ relied upon past relevant work that was a "composite job" of the two jobs identified by the ALJ (*id.* at 17–21).

For the reasons explained below, the undersigned agrees with Plaintiff as to the first three arguments and, therefore, recommends remand.

A. Symptom Evaluation

A symptom evaluation requires two steps: "[f]irst, the ALJ must determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to cause the claimant's alleged symptoms," and then second, "the ALJ must assess the intensity and persistence of the alleged symptoms." *Arakas v. Comm'r of SSA*, 983 F.3d 83, 95 (4th Cir. 2020) (citing 20 C.F.R. § 404.1529 and SSR 16–3p, 2016 WL 1119029 (Mar. 16, 2016)). A claimant is "entitled to rely exclusively on subjective evidence" to prove that her symptoms are so severe that they prevent her from working a full day. *Id.* at 95–96 (quoting *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006)); *see also Oakes v. Kijakazi*, 70 F.4th 207, 215–17 (4th Cir. 2023).

ALJ Chase explained that he discounted Plaintiff's statements about her symptoms "because the objective evidence of record fails to support the degree of limitation alleged." (R. 739.) ALJ Chase then proceeded to list evidence he deemed

6

inconsistent with Plaintiff's statements about her symptoms. (R. 739–40.) Despite finding Plaintiff's statements about her "limitations and pain . . . not fully consistent with the medical evidence of record," ALJ Chase stated he was "nevertheless "accord[ing] [Plaintiff] the benefit of the doubt" by "further reduc[ing] the residual functional capacity." (R. 740.) There are at least two problems with the course taken by the ALJ.

First, it is unclear what the ALJ meant when he reduced Plaintiff's RFC to give her "the benefit of the doubt" regarding her symptom severity statements.[2] (R. 740.) While ALJ Chase may have reduced the RFC based on Plaintiff's statements, he did not include all of the limitations claimed by Plaintiff. (*See* R. 737 (summarizing Plaintiff's hearing testimony regarding severity of symptoms).) This is tantamount to the ALJ discrediting some of Plaintiff's statements about her symptoms and crediting others. ALJ Chase did not identify which of Plaintiff's statements he gave the "benefit of the doubt" and why he chose those statements over others. *Cf.* SSR 16–3p, 2017 WL 5180304, at *10 (noting that in a symptom evaluation, "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer

---

[2] ALJ Chase said, "Although [Plaintiff]'s allegations of such significant limitations and pain [summarized by the ALJ on R. 737] were not fully consistent with the medical evidence of record, the undersigned accorded [Plaintiff] the benefit of the doubt and further reduced the residual functional capacity [assessment] to include [Plaintiff's] limitations as described above." (R. 740.)

7

can assess how the adjudicator evaluated the individual's symptoms"). In a case such as this where the ALJ assessed the RFC at the sedentary exertional level with additional limitations, every aspect of the ALJ's RFC assessment is important. *See* SSR 96–9p, 1996 WL 374185, at *1 (July 2, 1996) (reduced range of sedentary work "reflects very serious limitations" and is "relatively rare"). The ALJ's failure to explain the basis for his RFC assessment frustrates meaningful review. *See Mascio*, 780 F.3d at 640 (an ALJ's lack of explanation requires remand).

Second, while ALJ Chase was not required to "specifically refer to every piece of evidence in [the] decision," *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019) (quoting *Reid v. Comm'r of SSA*, 769 F.3d 861, 865 (4th Cir. 2014)), he was obligated "to consider all relevant medical evidence" and not "simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding," *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)). In his discussion of the evidence that formed the basis for discrediting Plaintiff's symptom severity statements, ALJ Chase cited no evidence that conflicted with his assessment. (R. 739–40); *but cf.* (Comm'r's Br. [DE #15] at 14 ("ALJs must generally explain how conflicting evidence was reconciled to facilitate judicial review.")); *Thomas*, 916 F.3d at 312 (ALJ erred by failing to explain why she did not discuss material countervailing evidence); SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996) (ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved"). At first blush, that is notable because ALJ Chase had already determined

8

that Plaintiff was (i) severely impaired by COPD, inflammatory arthritis, peripheral neuropathy, and degenerative disc disease, and (ii) limited to a reduced range of sedentary work.[3] (R. 735, 737.) More problematic, though, is that the record contains several pieces of evidence that appear consistent with Plaintiff's symptom severity statements. (*See generally* Pl.'s Br. at 9–11.) For example, the record indicates that Plaintiff has had severe pulmonary obstruction in connection with her COPD (R. 279, 974, 1074); used supplemental oxygen at night (R. 279, 695, 1277); and reported to medical providers symptom severity consistent with what she reported in connection with her DIB application (R. 669, 681, 974, 1276–77, 1305). Given the severe impairment findings and RFC assessment at the reduced range of sedentary work, ALJ Chase needed to explain why he discredited Plaintiff's symptom severity statements despite record evidence that would appear to support Plaintiff's statements. *See Lewis*, 858 F.3d at 869; *Thomas*, 916 F.3d at 312; SSR 96–8p, 1996 WL 374184, at *7. Accordingly, remand is necessary to facilitate meaningful judicial review.

### B. Medical Opinions

Plaintiff contends that ALJ Chase improperly evaluated the opinions of three treating providers—Dr. Jonathan Blackmore, M.D., Nurse Practitioner (NP) Cathy

---

[3] "Stating a claimant's RFC before conducting a function-by-function analysis is an error—even though, on its own, it does not necessarily require remand." *Thomas*, 916 F.3d at 312 (citing *Monroe*, 826 F.3d at 188). ALJ Chase stated Plaintiff's RFC before conducting the necessary functional analysis.

9

Sellers, and Dr. Lekeisha Jarrett, M.D. (Pl.'s Br. at 12–17.) The undersigned agrees for the reasons explained below.

When evaluating medical opinions, the ALJ must consider factors set forth in 20 C.F.R. § 404.1520c(b), (c)(1)–(5). *See generally Oakes*, 70 F.4th at 212 (summarizing the medical opinion evaluation process for disability claims filed after March 27, 2017). "The ALJ is not required to explain how [he] considered each of the relevant factors; instead, when articulating [his] finding about whether an opinion is persuasive, the ALJ need only explain how [he] considered 'the most important factors' of supportability and consistency." *Corbin v. Kijakazi*, No. 2:20-CV-60-M, 2022 WL 990487, at *2 (E.D.N.C. Mar. 31, 2022). "Supportability is the degree to which a provider supports their opinion with relevant, objective medical evidence and explanation, and consistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record." *Oakes*, 70 F.4th at 212. Generally, the ALJ must explain how the evidence led to his conclusions. *Arakas*, 983 F.3d at 95 ("To pass muster, ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions." (quoting *Monroe*, 826 F.3d at 189)); *see also Mascio*, 780 F.3d at 637 (remand is necessary when a reviewing court is "left to guess about how the ALJ arrived at his conclusions").

1. Blackmore & Sellers Opinion

Dr. Blackmore and NP Sellers submitted a treating source statement in September 2020 in which they opined that Plaintiff had more significant functional limitations than those assessed by ALJ Chase. (R. 445–48.) They indicated that their

10

opinion about Plaintiff's functional abilities was based on Plaintiff's pulmonary function test, use of supplemental oxygen, oxygen saturation level less than 90%, and Plaintiff's inability to ambulate without shortness of breath. (R. 446–47.)

As to the consistency factor, ALJ Chase explained that he found the Blackmore & Sellers opinion unpersuasive because it was "inconsistent with the evidence of record which show[s] that . . . [Plaintiff] frequently denied fatigue, malaise, cough, dyspnea, chest pain, dizziness, extremity weakness or numbness, difficulty with activities of daily living, or edema." (R. 738 (citing R. 979–1095[4]).) While it is true there are several instances in the records cited by ALJ Chase that are consistent with his statement about Plaintiff's denial of symptoms, there are also treatment notes in those same records where medical providers noted fatigue (R. 991, 1027, 1047), shortness of breath or dyspnea (R. 1010, 1012, 1037, 1076), extremity stiffness or pain (R. 999, 1003, 1070), and chronic cough (R. 1027, 1047). Furthermore, there are treatment notes in the record which indicate Plaintiff reported dizziness (R. 249, 312), shortness of breath or dyspnea (R. 279, 422, 669, 974 (from 2019 pulmonary function test), 1010, 1047, 1277, 1305), cough (R. 279, 669, 685, 1010, 1047), and extremity neuropathy (R. 1277, 1305). ALJ Chase did not explain how he reconciled this evidence, which appears to be consistent with the Blackmore & Sellers medical opinion. ALJ Chase also discredited the Blackmore & Sellers medical opinion because it was inconsistent with treatment notes from Dr. Jarrett indicating that Plaintiff did

---

[4] These records are from Wilmington Health and appear to contain treatment notes and records from several providers across several specialty areas.

11

not require help with activities of daily living, could travel alone, was not a fall risk, could shop for groceries without help, and had "good" "general" health. (R. 738.) But ALJ Chase did not explain how these notes from Dr. Jarrett are inconsistent with the Blackmore & Sellers medical opinion. Nor did he explain how the Blackmore & Sellers medical opinion was consistent with, or inconsistent with, Dr. Jarrett's medical opinion as a whole or Plaintiff's statements about her symptom severity. For these reasons, ALJ Chase's explanation as to the consistency of the Blackmore & Sellers medical opinion frustrates meaningful review.

As to the supportability factor, ALJ Chase merely stated that the Blackmore & Sellers medical opinion was inconsistent with the providers' own treatment notes. (R. 738.) However, in the Blackmore & Sellers medical opinion, they expressly note their opinion is based on Plaintiff's pulmonary function test, use of supplemental oxygen, oxygen saturation level of less than 90%, and Plaintiff's inability to ambulate without shortness of breath. (R. 446–47.) As Plaintiff notes, there are treatment notes from NP Sellers and pulmonary function test findings that appear consistent with the Blackmore & Sellers medical opinion. (Pl.'s Br. at 15 (citing R. 446, 674–75, 694, 1264).) ALJ Chase did not explain how this record evidence factored into his supportability analysis. *See Lewis*, 858 F.3d at 869. This lack of explanation frustrates meaningful review.

2. Jarrett Opinion

Dr. Jarrett submitted a treating source statement in November 2022 in which she opined that Plaintiff had more significant functional limitations than those

12

assessed by ALJ Chase. (R. 959–62.) ALJ Chase found Dr. Jarrett's opinion unpersuasive for the same reasons that he found the Blackmore & Sellers medical opinion unpersuasive: (i) it is inconsistent with "other evidence of record" indicating that Plaintiff "often" denied chronic cough, exercise intolerance, shortness of breath or dyspnea, and chest pain with exertion; and (ii) it is unsupported by Dr. Jarrett's treatment notes "which show that . . . [Plaintiff] frequently denied fatigue, malaise, cough, dyspnea, chest pain, dizziness, extremity weakness or numbness, difficulty with activities of daily living, or edema." (R. 738.) As explained above in regard to the Blackmore & Sellers medical opinion, there is record evidence left unaddressed by ALJ Chase that appears consistent with Dr. Jarrett's medical opinion about Plaintiff's functional abilities. ALJ Chase needed to address this countervailing evidence in connection with his evaluation of Dr. Jarrett's medical opinion to enable meaningful review. *See Lewis*, 858 F.3d at 869.

## C. Composite Job Issue

In light of the other issues requiring remand, the court need not address whether the ALJ erred by failing to correctly characterize Plaintiff's past relevant work at step four. This matter can be addressed on remand.

## CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 15, 2025**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. (May 2023).

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 1st day of August 2025.

_____
KIMBERLY A. SWANK
United States Magistrate Judge